UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**UNITED STATES OF AMERICA,**
    **Plaintiff,**

    **v.**                                          Case Number 2:24-cr-99
                                                                   JUDGE EDMUND A. SARGUS, JR.
**TERRANCE TREMALE COLVIN,**
    **Defendant.**

## OPINION AND ORDER

The matter before the Court is Defendant Terrance Tremale Colvin's Motion to Suppress Search Warrant and Acquired Evidence of an apartment search. (ECF No. 87.) The Government opposes Mr. Colvin's Motion. (ECF No. 93.) Mr. Colvin filed a reply in support. (ECF No. 96.) For the reasons stated below, Mr. Colvin's Motion (ECF No. 87) is **DENIED**.

## BACKGROUND

In August 2025, the Government charged Mr. Colvin by a Superseding Indictment with possession with intent to distribute methamphetamine, cocaine, and fentanyl; drug trafficking conspiracy; and firearms offenses. (ECF No. 65.) Mr. Colvin entered a plea of not guilty to all counts. (ECF No. 73.) A jury trial is scheduled to begin on January 26, 2026. (ECF No. 75.)

Mr. Colvin asks the Court to suppress all evidence obtained by law enforcement under the execution of a search warrant of Apartment 371 at 801 Polaris Apartments in Columbus, Ohio. (Mot., ECF No. 87, PageID 252.) He argues that the search warrant lacked probable cause because the Affidavit in support did not particularize a nexus between the place to be searched and the evidence sought and relied on stale information. (*Id.* PageID 257–59.)

The Affidavit in support ("Kukovec Affidavit") was sworn to by Special Agent Robert Kukovec of the United States Department of Homeland Security on May 30, 2024, before Magistrate Judge Kimberly A. Jolson in this Court. (ECF No. 93-1, PageID 306.) It is 12 pages

and contains 18 paragraphs. (*Id.*) In the Affidavit, Special Agent Kukovec outlines his experience and training and states that he is assigned to a multijurisdictional narcotics task force in central Ohio. (*Id.* PageID 295.) Special Agent Kukovec summarized his knowledge about how drug traffickers operate and execute their trafficking enterprise, including that they commonly maintain residences used as "stash houses" as locations for drug storage and distribution, use "nominees" to hide their true identities, and provide false information to law enforcement regarding their identity and residences. (*Id.* PageID 297.)

In the Affidavit, Special Agent Kukovec stated that he had probable cause to believe that evidence of drug trafficking was present inside 801 Polaris Parkway, Apartment 371, Columbus Ohio, and outlined the events that led to the search warrant request. (*Id.* PageID 296).

According to Special Agent Kukovec, an officer in New Mexico stopped a commercial car hauler for a traffic violation and observed that one of the cars being transported, a Honda Pilot, exhibited indicators of criminal activity. (*Id.* PageID 300.) The officer obtained the car hauler driver's consent to search the car and discovered two hidden compartments that contained 21 kilograms of methamphetamine and 7 kilograms of cocaine. (*Id.*) The car was being transported from Los Angeles, California to Columbus, Ohio. (*Id.*) Law enforcement replaced some of the drugs with sham drugs, placed trip wires in the hidden compartments, and arranged for a controlled delivery of the car at its destination at Polaris Fashion Place Mall at 1300 Polaris Parkway in Columbus, Ohio. (*Id.* PageID 301–02.)

After the Honda was delivered to the destination, Mr. Colvin picked it up and drove it 801 Polaris Apartments where he used a key card to enter a secured parking garage. (*Id.* PageID 303.) By the time investigators accessed the garage, the Honda was parked next to a Cadillac Escalade and Mr. Colvin was not around. (*Id.*) After about 30 minutes, Mr. Colvin returned and

took a duffle bag from the back of the Cadillac. (*Id.*) Then, he got into the driver's seat of the Honda and opened one of the hidden compartments, which activated a trip wire and alerted law enforcement. (*Id.*) A tactical team moved in and arrested Mr. Colvin. (*Id.*)

When Mr. Colvin was arrested, he had on his person a key ring that contained a key fob that granted access to 801 Polaris Apartments and apartment and mailbox keys for Apartment 371, but he denied living in the apartment building. (*Id.* PageID 304.) Investigators served a subpoena on 801 Polaris Apartments, and the apartment building provided a video of Mr. Colvin entering and exiting the apartment building that day. (*Id.*) The rental paperwork showed that the apartment was leased with a fraudulent identification card to an individual named Tevin Cance, the same initials as Mr. Colvin. (*Id.*) A search of the identification number revealed that the rightful owner of the number was deceased and not named Tevin Cance. (*Id.*) The fraudulent card had Mr. Colvin's date of birth, a photograph that looked like him, and was one digit off from Mr. Colvin's real identification number. (*Id.*) Additionally, management informed investigators that last summer, they entered an apartment after evicting a tenant and found a copy of the same fake identification card along with marijuana, drug paraphernalia, and a firearm. (*Id.*) Lastly, the phone number on the rental application was associated with Mr. Colvin. (*Id.* PageID 304–05.) The above information, Mr. Colvin's "lengthy criminal history for narcotics and weapons-related charges," and Special Agent Kukovec's training and experience, led him to believe that there was probable cause that Apartment 371 contained evidence of drug trafficking and request a search warrant. (*Id.* PageID 305.)

The Magistrate Judge authorized the search warrant on May 30, 2024. (*Id.* PageID 306). According to the Government, the resulting search of Apartment 371 recovered over one kilogram of fentanyl, two kilograms of methamphetamine, a small amount of cocaine, three

loaded firearms, ammunition, three kilogram presses, a kilogram wrapper, two digital scales with drug residue, an industrial mixer, and a money counter. (Resp., ECF No. 93, PageID 280.)

## ANALYSIS

Mr. Colvin argues that all the evidence obtained as a result of the search of Apartment 371 should be suppressed because the Kukovec Affidavit failed to establish probable cause. (Mot., PageID 251.) He also requests a hearing. (*Id.*) The Court first addresses Mr. Colvin's request for a hearing.

### I. Request for *Franks* Hearing

An affidavit in support of a search warrant is presumed valid. *United States v. Fountain*, 643 F. App'x 543, 545 (6th Cir. 2016). A defendant is entitled to an evidentiary hearing on the veracity of a warrant affidavit *only if* he or she makes a substantial preliminary showing "that [a] false statement was included in the affidavit by the affiant knowingly and intentionally, or with reckless disregard for the truth, and the false statement was necessary to the finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 155 (1978).

Mr. Colvin does not posit that the Affidavit contained any false statements. Accordingly, Mr. Colvin's request for a hearing on his Motion is **DENIED**. The Court proceeds to decide Mr. Colvin's Motion to Suppress Search Warrant and Acquired Evidence on the briefing.[1]

### II. Motion to Suppress Search Warrant and Acquired Evidence

---

[1] In in a footnote in his Reply, Mr. Colvin argues that the Court should grant an evidentiary hearing because there are contested issues of fact regarding "the specificity of the term 'TARGET LOCATION'" in the Affidavit. (ECF No. 96, PageID 317 n.2.) Mr. Colvin cites *United States v. Ickes*, for the proposition that an evidentiary hearing is permissible if it will "enable the court to conclude that contested issues of fact going to the validity of the search are in question." 922 F.3d 708, 710 (6th Cir. 2019). Unlike here, the requested hearing in *Ickes* was regarding a warrantless search. The appropriate standard for Mr. Colvin's request is the false-statement standard established by *Franks v. Delaware*, as outlined by the Court above.

4

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." U.S. Const. amend. IV. "At the very core" of the Fourth Amendment is the right to "be free from unreasonable governmental intrusions." *Kyllo v. United States*, 533 U.S. 27, 31 (2001).

Probable cause exists for a search when the "totality of the circumstances presented in a warrant affidavit would lead a person of reasonable caution to believe there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Smith*, No. 21-1457, 2022 WL 4115879, at *3 (6th Cir. Sep. 9, 2022) (citation modified); *Illinois v. Gates*, 462 U.S. 213, 238 (1983). There must be a "nexus between the place to be searched and the evidence sought" for probable cause to be present. *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc).

Courts must pay "great deference" to an issuing judge's probable cause determination, *McLane Co. v. EEOC*, 581 U.S. 72, 84 (2017), and overturn an issuing judge's decision only if he or she "arbitrarily exercised his or her authority," *United States v. Christian*, 925 F.3d 305, 311–12 (6th Cir. 2019) (en banc). The proper analysis "is whether the issuing judge had a 'substantial basis for concluding that a search would uncover evidence of wrongdoing.'" *United States v. Sanders*, 106 F.4th 455, 461 (6th Cir. 2024) (en banc) (quoting *Gates*, 462 U.S. at 263), *cert. denied*, 145 S. Ct. 603 (2024).

Mr. Colvin makes two arguments in support of suppressing the evidence found at Apartment 371. First, he argues that the Kukovec Affidavit did not demonstrate a nexus between his arrest and the presence of drug evidence in Apartment 371. (Mot., PageID 257–59.) Second,

5

he asserts that the evidence of the apartment's management finding the same false identification, drugs, and a firearm "last summer" was stale. (*Id.* PageID 259–61.) He also argues that the good-faith exception to the exclusionary rule does not apply. (*Id.* PageID 262–63.) The Court analyzes each argument in turn.

    A.    **Nexus**

Mr. Colvin contends that the Kukovec Affidavit did not a establish a nexus between Apartment 371 and the presence of drug evidence because law enforcement observed him only in the parking garage and never entering or exiting Apartment 371. (*Id.* PageID 257–58.) The fact that he was found attempting to possess drugs in an apartment building, he argues, is insufficient to create a nexus between the drugs and a specific apartment in the building. (*Id.* PageID 258.) The Government counters that the Affidavit established that Mr. Colvin is a drug dealer because he knowingly took possession of almost a million dollars' worth of drugs and took it to his secured apartment building. (Resp., PageID 280, 284.) The Government continues that the Kukovec Affidavit then connected Mr. Colvin and evidence of drug activity to Apartment 371 and based on Special Agent Kukovec's training and experience, connected evidence of drug trafficking to Apartment 371. (*Id.* PageID 285–86.)

The Court finds that the totality of circumstances outlined in the Kukovec Affidavit reasonably led the Magistrate Judge to believe that there was a fair probability of evidence of drug activity in Apartment 371. Mr. Colvin picked up a car that contained 27 kilograms of narcotics and drove it to a secure parking garage at 801 Polaris Apartments. He entered the apartment building, and his key ring contained keys to Apartment 371. Though Mr. Colvin denied living there to law enforcement, the Kukovec Affidavit presented indicators that Apartment 371 was Mr. Colvin's residence. It was rented under a fake name that resembled Mr.

6

Colvin's name with a fraudulent identification card that had many indicators linking to him. The phone number on the rental paperwork was associated with Mr. Colvin. Additionally, his record revealed "a lengthy criminal history for narcotics and weapons related charges." (Kukovec Affidavit, PageID 305.) Taking this information, along with Special Agent Kukovec's explanation of how drug traffickers operate led the Magistrate Judge to reasonably find a sufficient nexus between Apartment 371 and possible evidence of drugs.

Mr. Colvin relies on *United States v. Grant* to assert that "a person's status as an alleged drug dealer, standing alone, is not enough to support a warrant to search that person's real property for drugs" without "additional supporting evidence of drug activity linked to the property." No. 21-3686, 2023 WL 119399, at *1 (6th Cir. Jan. 6, 2023). The Sixth Circuit recently clarified its position on its "known drug dealer" precedents, rejecting a bright-line rule that "a probable cause nexus can *never* be satisfied by a warrant affidavit that establishes only that a defendant is a known drug dealer who lives at a certain location." *Sanders*, 106 F.4th at 465 (emphasis added); *see also Grant*, 2023 WL 119399, at *3 ("Whether a search was an unconstitutional intrusion is a fact-intensive inquiry that has defied the creation of bright-line rules.").

"Known drug dealer" cases address situations where there is no direct connection between a defendant's residence and drug activity, allowing the Magistrate Judge to infer that evidence of drug activity will be found at a known drug dealer's residence. *Sanders*, 106 F.4th at 465–66; *United States v. Long*, 155 F.4th 829, 835 (6th Cir. 2025). The Kukovec Affidavit did not purport to establish probable cause to search Apartment 371 *only* on Mr. Colvin's status as an alleged drug dealer. It presented a totality of circumstances, outlined above, that led the

7

Magistrate Judge to find that there was a fair probability that evidence of drug activity inside Apartment 371.

Additionally, the facts in *Grant* are distinguishable from Mr. Colvin's case. In *Grant*, officers observed the defendant park in front of an apartment, but not go inside, before participating in a single controlled buy. *Grant*, 2023 WL 119399, at *3. Also notably, in *Grant* officers waited 47 days before requesting a search warrant for the apartment. *Id.* at *2. Here, Mr. Colvin did enter the building and had the keys to Apartment 371. Though officers did not see Mr. Colvin entering Apartment 371, the common-sense conclusion is that he went into Apartment 371 when he was inside the building. Before that, law enforcement observed Mr. Colvin knowingly pick up a car from a public location containing a substantial quantity of drugs and drive it to the building's secured parking garage. Then, he spent at least 30 minutes inside the building before going back to the garage to access the hidden drugs in the Honda, with a duffle bag in hand. Thus, the facts here create significantly more connections to Apartment 371 that were lacking in *Grant*.

Accordingly, the Kukovec Affidavit established probable cause.

B. **Stale Evidence**

Mr. Colvin next argues that the information about the same fake identification card, along with drugs, drug paraphernalia, and a firearm, discovered in the evicted apartment "last summer" was stale and could not be used as a basis for finding a nexus to search Apartment 371. (Mot., PageID 260.) The Government counters that even if the information was not enough on its own to establish probable cause, there were many other facts that established probable cause including that one. (Resp., PageID 287.)

8

Stale information cannot support probable cause for a search warrant. *United States v. Frechette*, 583 F.3d 374, 377 (6th Cir. 2009). Information is stale when, because of the passage of time, it no longer suggests a fair probability that evidence of crime will be found at the search location. *United States v. Abboud*, 438 F.3d 554, 572 (6th Cir. 2006). The "question of staleness depends on the "inherent nature of the crime." *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998).

As discussed above, probable cause is established by considering the totality of the circumstances, not each fact in isolation. In the Court's opinion, the information about the second apartment, though noteworthy, is not a significant fact in creating a nexus between Apartment 371 and evidence of drugs. Instead, it connects the fraudulent identification card to Mr. Colvin, and thus, Mr. Colvin to drugs. The nexus between Apartment 371 and drug activity would have been established without the information about the second apartment. Further, because the Court concluded that the Kukovec Affidavit established probable cause based on the totality of the circumstances, the Court need not examine the staleness of a single fact in the Affidavit.

    **C.    Good-Faith Exception**

Last, Mr. Colvin argues that the good-faith exception cannot apply because the Affidavit was so deficient that investigators' reliance upon it was unreasonable. (Mot., PageID 263.) The Court need not address the good-faith exception to the exclusionary rule given its finding above that the Kukovec Affidavit was supported by probable cause.

## CONCLUSION

For the above reasons, Defendant's Motion to Suppress Search Warrant and Acquired Evidence is **DENIED**. (ECF No. 87.)

**IT IS SO ORDERED.**

**12/22/2025**                                                       **s/Edmund A. Sargus, Jr.**
**DATE**                                                            **EDMUND A. SARGUS, JR.**
                                                                      **UNITED STATES DISTRICT JUDGE**