UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**UNITED STATES OF AMERICA,**
    Plaintiff,

        v.                                                                 Case Number 2:24-cr-99
                                                                           JUDGE EDMUND A. SARGUS, JR.

**TERRANCE TREMALE COLVIN,**
    Defendant.

## OPINION AND ORDER

In August 2025, the Government charged Defendant Terrance Tremale Colvin by a Superseding Indictment with possession with intent to distribute methamphetamine and fentanyl, drug trafficking conspiracy, and firearms offenses. (ECF No. 65.) Mr. Colvin entered a plea of not guilty to all counts. (ECF No. 73.) A jury trial is scheduled to begin on January 26, 2026. (ECF No. 75.)

The matter now before the Court is Mr. Colvin's Motion to Suppress evidence of a car search. (ECF No. 97.) The government opposes Mr. Colvin's Motion. (ECF No. 104.) For the reasons stated below, Mr. Colvin's Motion (ECF No. 97) is **DENIED**.

## BACKGROUND

On May 27, 2024, a New Mexico State Police Officer conducted a traffic stop of a commercial car hauler because its license plate was obstructed. (ECF No. 97-3, PageID 330.) As part of the stop, the officer inspected the shipping documents of the cars on the hauler. (*Id.*) He noticed signs of suspicious activity related to a Honda Pilot, including that it displayed an expired Oregon transporter license plate, was being shipped from an "address that did not exist," and was being delivered to a shopping mall. (*Id.* PageID 332–33; Officer Body Camera Video, ECF No. 97-1, at 4:25–5:10, 7:30–8:05.) These circumstances reminded the officer of another

drug case he worked on. (*Id.* at 7:40–8:05.) The officer received verbal consent from the car hauler driver to search the Honda. (*Id.* at 8:08–15; ECF No. 97-3, PageID 330.)

Two officers conducted the car search. (*Id.* PageID 332.) One officer noticed a strong odor of marijuana and found marijuana product in the center console. (*Id.*) The other officer observed that the carpet in the trunk of the car was glued to the interior of the car, which is not standard practice in car manufacturing. (*Id.*) He lifted the carpet and discovered a trapdoor that opened to reveal a hidden compartment containing narcotics. (*Id.*) The car hauler was moved to a secure location and law enforcement discovered a second hidden compartment in the center console containing more narcotics. (*Id.*) In total, the Honda contained 21 kilograms of methamphetamine and 7 kilograms of cocaine. (*Id.* PageID 333.)

Per the Honda's shipping documents, it was being transported from Los Angeles, California to Polaris Fashion Mall in Columbus, Ohio. (ECF No. 97-4, PageID 335.) The individual shipping the car was "Aston Oliver" and the recipient was "Michael Brown." (*Id.*)

The car hauler driver agreed to work with law enforcement and deliver the Honda to its destination in Columbus, Ohio. (*Id.* PageID 336.) Law enforcement placed trip wires in the car's hidden compartments and replaced some of the drugs with sham drugs. (*Id.* PageID 336–37.) Upon arrival in Columbus, the car hauler driver contacted the recipient's phone number listed in the shipping documents to coordinate delivery. (*Id.* PageID 337.) Shortly after, Mr. Colvin arrived at the pickup location and signed for the car. (*Id.*) Mr. Colvin drove the Honda to an apartment complex and was eventually arrested when he opened one of the hidden compartments containing the sham narcotics. (*Id.* PageID 337–38.)

## ANALYSIS

2

Mr. Colvin asks the Court to suppress all evidence obtained by law enforcement during the search of the Honda in New Mexico. (Mot., ECF No. 97, PageID 320.) He also requests a hearing on this Motion. (*Id.* PageID 320.) Substantively, Mr. Colvin argues that as the eventual recipient of the car, he should be granted standing to challenge the search. (*Id.* PageID 323.) Then he challenges the scope of the consent granted by the car hauler to search the car. (*Id.* PageID 325–26.) The Court first addresses Mr. Colvin's request for a hearing.

### I. Request for Hearing

An evidentiary hearing on a motion to suppress a warrantless search is required when "the motion is sufficiently definite, specific, detailed and non-conjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *United States v. Ickes*, 922 F.3d 708, 710 (6th Cir. 2019).

Mr. Colvin's basis for an evidentiary hearing is a written consent form signed by the car hauler driver allegedly at 10:30 a.m. (Mot., PageID 322.) He avers that the body camera footage of the traffic stop does not show the car hauler driver signing the form at that time, meaning the officer doctored the form to indicate that he had written consent to search the car before conducting the search. (*Id.* PageID 322–23.) Because "the chain of investigation reports and probable cause affidavits relied upon and cited this materially doctored information," Mr. Colvin argues he should have an opportunity to cross-examine the officer at an evidentiary hearing. (*Id.* PageID 323.)

An evidentiary hearing is not necessary. The body camera footage unambiguously shows that the officer received verbal consent from the car hauler driver before searching the car. (Officer Body Camera Video at 8:08–15.) Mr. Colvin does not challenge this. Instead, as discussed below, Mr. Colvin challenges the scope of the car hauler driver's consent. Thus, there is no contested issue of fact as to whether the officers had consent to search the car. Because of

3

this, the Court need not determine whether the time written on the consent form is accurate and an evidentiary hearing is not necessary.

Accordingly, the Court **DENIES** Mr. Colvin's request for an evidentiary hearing and proceeds to decide his Motion on the briefing.

## II. Motion to Suppress Evidence Acquired in the Car Search

In his Motion, Mr. Colvin argues that he should be granted Fourth Amendment standing to challenge the search of the Honda as its eventual recipient.[1] (*Id.* PageID 324–25.) Assuming he has standing, he then challenges the scope of the car hauler driver's consent to search the car. (*Id.* PageID 325.) He asserts that the car hauler driver's consent was limited to the same authority that the driver himself had over the car. (*Id.* PageID 325–26.) The Court analyzes each argument in turn.

### A. Standing to Challenge the Car Search

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. To have standing to challenge a car search under the Fourth Amendment, the defendant must "exhibit a legitimate expectation of privacy in the car at the time of the search." *United States v. Rogers*, 97 F.4th 1038, 1042 (6th Cir. 2024); *see also United States v. Washington*, 573 F.3d 279, 282 (6th Cir. 2009). An expectation of privacy exists when a person has a possessory or property interest in the place searched or items seized. *United States v. Davis*, 430 F.3d 345, 360 (6th Cir.

---

[1] Mr. Colvin also argues that he should have standing to challenge the car search because of the "deliberate police misconduct" in falsifying the time on the written consent form. (Mot., PageID 323–24.) As discussed in Part I, the officer received verbal consent before searching the car, a fact that is not contested by Mr. Colvin. Further, Mr. Colvin does not cite any case law for his proposition that police misconduct should grant a defendant standing to challenge a search when standing would otherwise not exist. (*See id.* PageID 323–25.)

4

2005). The defendant has the burden of establishing that he or she has a legitimate expectation of privacy in the place that was searched. *United States v. Talley*, 275 F.3d 560, 563 (6th Cir. 2001).

Mr. Colvin concedes that courts have found similarly situated defendants, as recipients of a car being transported by car hauler, to lack standing to challenge a search of the car. (Mot., PageID 324 (citing *United States v. Covarrubias*, 847 F.3d 556 (7th Cir. 2017) and *United States v. Sierra-Serrano*, 11 F.4th 931 (8th Cir. 2021)).) He argues, however, that these decisions leave a gap in Fourth Amendment protections because if the recipient of a car is unable to contest a search, then no one can. (*Id.*)

The Court disagrees with Mr. Colvin because the cases he cites articulate who has standing to challenge such a search: the owner of the car. *Sierra-Serrano*, 11 F.4th at 933 ("[The defendant] would have a privacy interest [in the car] if he owned it . . ."); *Covarrubias*, 847 F.3d at 558 ("The district court properly concluded that that Covarrubias did not have a legitimate expectation of privacy in the car because he did not own the car . . .").

In *United States v. Covarrubias*, a case with nearly identical facts to the instant case, the Seventh Circuit found that the defendant had no legitimate expectation of privacy in the car because he did not own the car, had never been inside it at the time of the search, and did not have control of its contents. 847 F.3d at 558. The *Covarrubias* Court also noted that the defendant lacked an expectation of privacy because the bill of lading gave the car hauler driver control of the car, which "empowered [him or her] to act in direct contravention of the defendants' privacy interests." *Id.* (citing *United States v. Crowder*, 588 F.3d 929, 934–35 (7th Cir. 2009)). The Eighth Circuit, in *United States v. Sierra-Serrano,* concluded that the defendant did not have a reasonable expectation of privacy in the car because he did not own it and was not the named recipient or sender of the car on the shipping documents. 11 F.4th at 933–34.

5

The Fourth Circuit reached the same conclusion after a thorough analysis in *United States v. Castellanos*: the defendant did not have an expectation of privacy in a car being transported by car hauler. 716 F.3d 828, 834–35. This was because he did not provide any documentation, such as a title, bill of sale, or registration, that he owned the car. *Id.* at 834. The *Castellanos* Court also noted that the defendant did not present any evidence that he had a privacy interest in the contents of the car, such as by showing that the car's owner gave him permission to drive the car or act as the owner's agent. *Id.* Further, analogizing the car to a package, the Court noted that "individuals may assert a reasonable expectation of privacy in packages addressed to them under fictitious names," but the defendant never presented evidence that the name of the recipient on the car's shipping document was his alter ego or fictitious name. *Id.* (citing *United States v. Villarreal*, 963 F.2d 770, 774 (5th Cir. 1992)).

To the Court's knowledge, the Sixth Circuit has not yet addressed the question of standing in car hauler search cases such as this one, but the Court finds the Fourth, Seventh, and Eighth Circuit decisions instructive. Like the Defendants in those cases, Mr. Colvin did not have a reasonable expectation of privacy in the Honda at the time of its search. Most importantly, he acknowledges that he does not own the Honda. (Mot., PageID 323.) Further, he was not the named sender or recipient of the car. Per the shipping documents, the sender was Aston Oliver and the recipient was Michael Brown. Mr. Colvin does not claim that either name is his alias or alter ego. He also does not attempt to argue that he had permission from the car's owner to exert control over the car. His only claim is that because he picked up the car, he was its intended recipient. But this does not establish a possessory interest in the car or its contents. Like the defendant in *United States v. Covarrubias*, Mr. Colvin cannot establish a legitimate expectation of privacy in the car because he does not own it, was not its named sender or recipient, and had never been in the car at the time of the search.

This outcome aligns with the Sixth Circuit in non-car hauler search cases that have some overlapping facts with the instant case. In *United States v. Elmore,* the Sixth Circuit found that a defendant who was not on the scene during a car search, but was later implicated in a drug trafficking scheme, did not have an expectation of privacy in the car to challenge the car search. 304 F.3d 557, 561 (6th Cir. 2002). The Sixth Circuit stated, "There is no evidence that Elmore had either the right or ability to exclude others from the car, or that Elmore had taken any precautions to maintain privacy in the car, and it is undisputed that Elmore was nowhere in the vicinity of the car when the search occurred." *Id.* at 562. In another case, the Sixth Circuit held that a defendant who rented a car for another person to drive had no subjective expectation of privacy in the car because he was not in possession of the car, had no access to it, and could not exclude others from it. *United States v. Blanco*, 844 F.2d 344, 349 (6th Cir. 1988). These decisions show that a defendant having a tenuous connection to a car does not grant the defendant an expectation of privacy in that car. Here, Mr. Colvin picked up the Honda after its delivery, but like the defendants in *Elmore* and *Blanco*, he cannot establish a possessory interest in the car to grant him standing to challenge its search.

Accordingly, Mr. Colvin does not establish that he had a reasonable expectation of privacy in the Honda or its contents at the time of the search, and thus, does not have standing to challenge the constitutionality of the car search. His Motion to Suppress the car search is **DENIED**.

### B. Scope of Consent

Even if Mr. Colvin had Fourth Amendment standing to challenge the car search, his Motion would still be denied because the search was constitutional.

A warrantless search is "per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). Consent is one of those exceptions. "An officer with consent needs neither a warrant nor probable cause to conduct a constitutional search." *United States v. Jenkins*, 92 F.3d 430, 436 (6th Cir. 1996). "[T]he scope of the consent given determines the permissible scope of the search." *United States v. Gant*, 112 F.3d 239, 242 (6th Cir. 1997). The standard for measuring scope of consent is "objective reasonableness" or what "the typical reasonable person would have understood by the exchange between the officer and the suspect." *Florida v. Jimeno*, 500 U.S. 248, 251 (1991).

Here, the officer received verbal consent from the car hauler driver before conducting the car search. In the body camera footage, the officer asks, "Can we search that Pilot?" and the car hauler driver replies, "Yeah, yeah you can." (Officer Body Camera Video, 8:08–8:15.) Mr. Colvin does not challenge the car hauler driver's ability to consent to the search or the validity of consent. Instead, Mr. Colvin challenges the scope of consent, arguing that the car hauler driver had limited authority over the Honda so he could not consent to an invasive search of the car, specifically under the carpet in the trunk. (Mot., PageID 325–26.)

The single case that Mr. Colvin cites for his proposition is a Fourth Circuit case with similar facts where a car hauler driver consented to a search of one of the cars he was transporting and the officer searched under the car's carpeting. *United States v. Twitty*, No. 23-4234, 2025 WL 2049059, at *2 (4th Cir. July 22, 2025). But the case provides little, if any, guidance because the Fourth Circuit did not analyze the scope of consent because it ultimately concluded that the car search was constitutional on other grounds. *Id.* at *10 ("But it is enough to

8

simply assume that the driver could not consent to the more invasive search under the carpet because that search was supported by multiple bases for probable cause.").[2]

Like Fourth Amendment standing, the issue of scope of consent in a car hauler search has not been addressed by the Sixth Circuit but the Court finds *United States v. Jenkins*, a case with analogous facts, instructive. 92 F.3d 430 (6th Cir. 1996). There, a tractor trailer driver consented to a search of the truck's trailer where law enforcement subsequently found 319 pounds of marijuana in a secret compartment. *Id.* at 433. The owner of the trucking company was implicated in a drug trafficking scheme and moved to suppress evidence discovered in the search. *Id.* at 43–34. The Sixth Circuit affirmed the denial of the motion because the tractor trailer driver consented to the search. *Id.* at 438. The question before the Court centered on whether it was reasonable for the officer to rely on the tractor trailer driver's consent to search the trailer. *Id.* at 437–38. The Court found that it was reasonable for the officer to assume that the truck driver had authority to consent to a search of the trailer because tractor trailer drivers generally possess a "considerable grant of authority" over the truck's trailer—they have keys to it and are allowed to enter the trailer for loading, unloading, inspections, and emergencies. *Id.* Thus, the Court concluded that unless an officer is presented with information to the contrary, he or she may assume that a tractor trailer driver has authority to consent to a search of the trailer. *Id.* at 439.

---

[2] The automobile exception permits officers to "conduct a warrantless search of a vehicle if they have probable cause to believe that the vehicle contains evidence of a crime." *United States v. Watson*, 142 F.4th 872, 881 (6th Cir. 2025); *Hernandez v. Boles*, 949 F.3d 251, 259 (6th Cir. 2020). A full analysis into probable cause in this case is not necessary because the officer had consent to search the car. But the Court notes that it is likely that the search was also constitutional on the basis of probable cause. The car had an expired transporter license plate, was picked up at an address that appeared to not exist, and was being delivered to a mall instead of a residence—circumstances that led the officer to believe, based on his experience, that there was evidence of a crime or contraband in the car.

Applying the Sixth Circuit's reasoning in *United States v. Jenkins*, the Court finds that it was reasonable for the officer to assume that the car hauler driver could consent to a search of the Honda. Like the tractor trailer driver in *Jenkins*, the car hauler driver had significant authority over the Honda because he had the keys to it and had authority to access its interior and operate it. The *Jenkins* Court did not address scope of the tractor trailer driver's consent, but the reasoning there can be applied to consider whether it was reasonable for the officer to assume that the car hauler driver could consent to a full search of the car. Because of the substantial authority that the car hauler driver had over the Honda and without any information to the contrary, it was reasonable for the officer to assume that he had consent to search the entire car, including under the carpet in the trunk. *See also United States v. Garrido-Santana*, 360 F.3d 565, 576 (6th Cir. 2004) (holding that general consent to search a car encompassed consent to search inside the car's gas tank); *United States v. Simmons*, 202 F. App'x 82, 88 (6th Cir. 2006) (collecting cases from other circuits where courts found that consent to search a car encompassed hidden compartments inside the car).

Accordingly, even if Mr. Colvin had Fourth Amendment standing to challenge the car search, his Motion would still be denied.

## CONCLUSION

For the reasons stated above, (ECF No. 97) Defendant's Motion to Suppress Evidence acquired in the car search is **DENIED**.

**IT IS SO ORDERED.**

**1/9/2026**　　　　　　　　　　　　　　　　　　　　　**s/Edmund A. Sargus, Jr.**
**DATE**　　　　　　　　　　　　　　　　　　　　　　　**EDMUND A. SARGUS, JR.**
　　　　　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**